1
2
3
4  Dennis Gewant
5  269 S Beverly Dr Ste 102
   Beverly Hills CA 90012
6  310-276-4900
   atlasjudgmentrecovery@gmail.com
7
8  Sharon Insul
   140 ½ S Bedford Dr
9  Beverly Hills CA 90012
10 310-273-6453
11 sharons3@me.com
12 Plaintiffs, *Pro Se*

```
                        ┌─────────────────────────────────┐
                        │              FILED              │
                        │   CLERK, U.S. DISTRICT COURT    │
                        │  ┌───────────────────────────┐  │
                        │  │                           │  │
                        │  │        08/02/24           │  │
                        │  │                           │  │
                        │  └───────────────────────────┘  │
                        │ CENTRAL DISTRICT OF CALIFORNIA  │
                        │  BY: _____ASH_____ DEPUTY │
                        └─────────────────────────────────┘
```

13
14                 UNITED STATES DISTRICT COURT
15                 CENTRAL DISTRICT OF CALIFORNIA
16

17  Dennis Gewant and Sharon Insul,          Case No.: 2:24-cv-05675-SB-JPR

18  Plaintiffs,                              **FIRST AMENDED VERIFIED**
                                             **COMPLAINT FOR NEGLIGENCE,**
19                                           **NEGLIGENT INFLICTION OF**
            v.                               **EMOTIONAL DISTRESS,**
20                                           **INTENTIONAL INFLICTION OF**
                                             **EMOTIONAL DISTRESS, AND**
21  JPMorgan Chase Bank, N.A. and Wells      **BREACH OF THE COVENANT OF**
    Fargo Bank, N.A.                         **GOOD FAITH AND FAIR DEALING**
22
    Defendants                              **(JURY DEMANDED)**
23
24                                           (LASC Case #24SMCV02563)
25

26

27  To the Defendants, their Counsel, and this Honorable Court, Plaintiffs allege as

28  follows:

---

FIRST AMENDED VERIFIED COMPLAINT

1

## **JURISDICTION AND VENUE**

1. The actions of the Defendants complained of herein, occurred within this District.

2. All of the causes of action arise under California state law.

3. There is no jurisdictional limit in this Court as to the amount of damages that may be awarded.

4. The first of the series of events giving rise to the causes of action in this case occurred no more than two years ago.

5. This case was timely removed from Los Angeles County Superior Court by Defendant JPMorgan Chase Bank, N.A. with an assertion of diversity jurisdiction, which the Plaintiffs do not dispute.

6. Accordingly, this Court has jurisdiction over this Complaint, and venue is appropriate.

## **PARTIES**

7. The Plaintiffs are Dennis Gewant ("Gewant") and his wife, Sharon Insul ("Insul"), who both reside in Los Angeles County. Gewant's mailing address

is 269 S. Beverly Dr. Ste 102, Beverly Hills CA 90012. Insul's mailing address is 140 ½ S. Bedford Dr, Beverly Hills CA 90012.

8. Defendant JPMorgan Chase Bank, N.A. ("Chase") is a nationally chartered banking corporation doing business in this county and judicial district, domiciled in Ohio. Any of its branches may be served with legal process, including the branch located at 9245 Wilshire Blvd, Beverly Hills CA 90210.

9. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a nationally chartered banking corporation doing business in this county and judicial district, domiciled in South Dakota. Any of its branches may be served with legal process, including the branch located at 9355 N Camden Dr, Beverly Hills CA 90210.

## **GENERAL ALLEGATIONS**

10. This case arises in connection with wrongdoing by the Defendants in connection with a financial transaction relating to the enforcement of a civil money judgment in Los Angeles Superior Court case #LC084540. Gewant

had taken assignment of that judgment in the name "Dennis Gewant DBA

Atlas Judgment Recovery."

11. As his fictitious business name suggests, Gewant is in the business of

enforcing civil money judgments. He has been in that business for

approximately 15 years.

12. Plaintiffs' claims against the Defendants arise out of several acts of

egregious misconduct that began in June 2022 as an unjustified

overreaction to a simple inquiry connected with a legitimate wire transfer

transaction in the ordinary course of Gewant's business.

13. In December, 2023, Gewant sent a demand letter packet to both

Defendants. See Exhibit 1 to the original Complaint, starting on page 26 of

DE #1-1.[1]

14. Both Defendants rejected the demand and made no counteroffers.

---

[1] The original Complaint was accompanied by approximately a dozen exhibits. Chase's Notice of Remand included the entire Complaint with all its exhibits. For brevity, they are incorporated by reference here rather than being reattached.

FIRST AMENDED VERIFIED COMPLAINT

15. The case cited in Chase's rejection letter (*Id.,* p. 49, original Complaint Ex. 2, p. 1), *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.* (1996) ("*Software Design*"), is completely inapplicable to this case. In fact, the comparison is laughable.

16. In the instant case, there was and is no villain in the position of McDonald in *Software Design*. This is not a case where a bank was accused of allowing a villain to do harm to the plaintiff. It is "sort of" the converse. In the instant case, Chase accused the PLAINTIFFS of being villains, thereby CHASE caused harm (with "help" from Wells Fargo), because of the falsity of the accusation and the consequences that ensued.

17. Contrary to what was true of the losing plaintiff in *Software Design*, the Plaintiffs here were in no position to perform any "scrutiny" or "background check" or "monitoring of services rendered," nor did they have any duty to do so. Instead, they were both simply innocent bystanders who were harmed by a false accusation, the failure to retract it, and the failure to unwind acts taken in apparent reliance on it, long after its falsity should have become thoroughly apparent.

18. The comparison of this case to *Software Design* is so ludicrous, it is a violation of California Code of Professional Conduct 4.1(a) concerning communications with third parties.

19. The Plaintiffs have held personal and business accounts with Defendant Wells Fargo for 32 years, with six-figure total balances in recent years. They have always been excellent customers. They never gave Wells Fargo or any other bank any reason to suspect that Plaintiffs were engaged in any fraudulent activities. Nor have Plaintiffs ever lost any checks or been defrauded in relation to their accounts at Wells Fargo. Plaintiffs believe that they have never even requested a stop payment on any check.

20. On or about June 7, 2022, Chase made a false report to Wells Fargo, alleging fraud and recalling a wire transfer in the amount of $45,000, where the wire transfer to Gewant had been requested by a Chase customer, Linnet Akop, in the ordinary course of business between her and Gewant.

21. Ms. Akop never requested that the wire transfer be recalled, never alleged that any fraud had occurred or was suspected, and never alleged any other kind of impropriety against either of the Plaintiffs.

22. As a direct result of the fraud allegation by Chase, Wells Fargo froze all of the Plaintiffs' accounts, including the checking account of Insul, who had nothing to do with Gewant's judgment enforcement business or the wire transfer, and Gewant's savings account, which was a similarly innocent bystander.

23. Wells Fargo did not call Gewant or Insul to inform them of the freeze, which Gewant did not discover until June 9 when he was denied the ability to cash a check.

24. On June 10, 2022, in an attempt to get the freeze released, Gewant, Insul, and Ms. Akop met with employees for more than two hours at Chase's branch location at 500 N Glendale Ave, Glendale CA 91206, to assure Chase that no fraud had occurred. At that meeting Ms. Akop provided a wet-signed letter attesting to the fact that there had been no fraud, and provided copies to Chase (through its employee Arin Hovanesian) and Gewant.

25. Also on June 10, Chase employee Hovanesian communicated with the wire transfer department of Chase by email to the effect that a "fraud recall" had

been executed in error and should be retracted. Hovanesian's efforts did not resolve anything at Chase, and Wells Fargo did nothing to investigate the reasons for the fraud allegation and recall.

26. Despite Hovanesian's conclusion and communication on June 10, Chase did nothing until June 29 – 19 days later – to retract the allegations of fraud that it had made to Wells Fargo, and Wells Fargo did not release the devastating, total freeze of all the Plaintiffs' accounts until then.

27. The freeze affected funds in the aggregate amount of approximately $135,000, even though the wire transfer had been only in the amount of $45,000.

28. Gewant made an explicit, reasonable offer to Wells Fargo to allow $45,000 – the amount of the transaction – to remain frozen while releasing the rest of his and his wife's funds, so that they could shop for groceries, pay bills, and otherwise continue their normal financial life. Wells Fargo rejected that offer. Gewant raised the offer to $75,000, but Wells Fargo rejected that offer as well.

29. On information and belief, Chase never corrected its false statement(s) to Wells Fargo that there had been evidence of fraud in connection with the wire transfer until the fraud report was finally recalled on June 29. That was 19 days after Chase had been informed by Gewant, Ms. Akop, and Chase's own employee Hovanesian, that the wire transfer should never have been recalled and that there had never been any evidence of fraud in connection with the wire transfer. *Id.*, p. 30, Original Complaint Ex. 1, p. 5.

30. Hovanesian first stated to Gewant by telephone on June 9 that he could not locate the recall letter, so there was no way to ***retract*** the recall.

31. Soon thereafter, Wells Fargo stated to Gewant that the recall letter received from Chase was an internal document, one that they would not release to Gewant without a subpoena.

32. According to Hovanesian, Gewant needed to provide a copy of that letter to Chase to prove that they in fact did send a recall letter, and to help them find it so that they could retract it.

33. Of course, even that position by Chase was unreasonable. They did not need to see a copy of the recall letter in order to issue a statement to the

effect that there was no longer any suspicion of fraud in connection with the wire transfer that had been sent to Gewant that month. If the Defendants use systems, policies, and procedures that are too complicated for such a simple statement to resolve such an issue, that is on them, not the Plaintiffs.

34. Gewant told Wells Fargo that going through a subpoena process would take too long, and that his wife and he needed access to some of their funds immediately so that they could meet day-to-day financial needs. Nonetheless, Wells Fargo did not relent in its unreasonable position not to release the letter.

35. The Plaintiffs' inability to even buy groceries, the uncertainty of when the situation would get resolved, and what it would take to resolve it, all caused emotional distress to the Plaintiffs.

36. The emotional distress was caused in part by the fact that Insul and her bank accounts had nothing to do with the transaction that was falsely described by Chase as fraudulent.

37. As Insul's long-time, loving husband, Gewant suffered emotional distress because of the emotional distress that his wife was undergoing, in addition

to the directly caused emotional distress of the business interruption and his own inability to buy groceries or pay personal bills.

38. For the first time in his life, Gewant suffered difficulty getting to sleep and remaining asleep. Concerned about becoming dependent on prescription medication, he first tried several over-the-counter sleep aids including melatonin, Tylenol PM, and Unisom Sleep Tabs, which proved ineffective. In December 2023 he requested and was given a prescription for zolpidem (generic Ambien). He continued taking that prescription for several months after obtaining it. He has continued to suffer from repetitive nightmares about being homeless, and wakes up worried about his funds getting frozen again.

39. Both of the Plaintiffs were more than 78 years old when the Defendants engaged in the above-described misconduct. The Plaintiffs' sudden, inexplicable, unwarranted impoverishment at the hands of the Defendants was shocking to the conscience, justifying exemplary and/or punitive damages.

40. Although the contract between the Plaintiffs and Gewant's corporation on the one side, and Wells Fargo on the other, included a clause that permitted Wells Fargo to freeze funds in the event that it detected evidence of fraud, Wells Fargo acted on that clause in a way that violated the covenant of good faith and fair dealing.

Wells Fargo acted on that clause in a way that violated the covenant of good faith and fair dealing.

41. Wells Fargo never had any *substantial* evidence of any fraud connected with the Plaintiffs' accounts or the wire transfer.

42. Chase never had any *substantial* evidence of any fraud connected with the Plaintiffs' accounts or the wire transfer.

43. Chase never had any evidence whatsoever of any fraud connected with the Plaintiffs' accounts or the wire transfer.

44. The Defendants never had any evidence at all that cash was involved, that the wire transfer was going to or from overseas, that there was any coercion involved, or that guns, drugs, or terrorism were in any way involved in the transaction from Ms. Akop's inquiry about it.

45. Chase's statements to Wells Fargo regarding the wire transfer were made with reckless disregard for their truth.

46. The Plaintiffs were damaged by Chase's statements to Wells Fargo.

47. No privilege protected Chase's statement to Wells Fargo.

48. No privilege protected Chase's failure and refusal to immediately retract its false and defamatory statement that it had made to Wells Fargo.

49. Since fraud is a crime, the false statement that Gewant and/or Ms. Akop had committed fraud was defamation *per se*.

50. Unfortunately, the statute of limitations for defamation expired before the Plaintiffs filed their original Complaint, so that cause of action is being dropped in this Amended Complaint. Nonetheless, the defamation related allegations support and make plausible the other allegations and causes of action presented in this amended complaint.

51. One of the business interruptions suffered by Gewant included the dishonoring of a check that Gewant had written to the Los Angeles County Sheriff's Department in the normal course of his business in relation to a different case from the Akop case. He also suffered wasted time, embarrassment, and anxiety caused by his having to ask other payees to delay depositing checks that he reasonably expected to bounce because of the freeze that Wells Fargo had put on all his accounts, confirmed by a

Wells Fargo employee who told Gewant that no checks would clear until the freeze was resolved.

52. Another business interruption included the delay of the resolution of the matter between Gewant and Ms. Akop.

53. The Defendants had constructive or actual knowledge that emotional distress would probably result from their conduct.

54. The Defendants had actual knowledge that emotional distress had in fact already resulted from some of their conduct. That was because Gewant stated that to them on more than one occasion during the course of the events complained of herein.

55. The Defendants' conduct showed that they gave little or no thought to the probable effects of their conduct on the Plaintiffs.

56. The emotional distress suffered by the Plaintiffs was not mild or brief. It was distress so substantial [and/]or long-lasting that no reasonable person should be expected to bear it. See *Hughes v. Pair* (2009), 46 Cal.4th 1035.

57. The Defendants had a duty to exercise reasonable care in drawing and communicating conclusions about whether fraud had been attempted or accomplished in connection with the Plaintiffs' accounts.

58. The Defendants had a duty to timely correct any incorrect conclusions and communications concerning any allegation of fraud involving the Plaintiffs' accounts.

59. On several occasions, both Defendants failed and refused to communicate with each other at Gewant's request to expedite correction of the false report of fraud and unfreeze the Plaintiff's accounts.

60. Wells Fargo had a duty to freeze only an amount of funds necessary to protect its interests in the event that fraud or some reasonable possibility of financial loss to Wells Fargo was confirmed, and to timely release any and all account freezes as soon as Wells Fargo had reason to believe there was no longer a reasonable possibility of financial loss connected to the Plaintiffs' accounts.

61. The Defendants failed in those duties.

1
2
3
4   62. The Plaintiffs were harmed by those failures.
5
6   63. Because of the violation of the covenant of good faith and fair dealing,
7       Wells Fargo waived any otherwise applicable contractual clauses requiring
8       mediation, arbitration, or attorney fee shifting.
9
10                  **FIRST CAUSE OF ACTION: NEGLIGENCE (AS TO BOTH**
11
12                              **DEFENDANTS)**
13
14  64. All of the preceding allegations are incorporated by reference except to the
15      extent that they are inconsistent with this cause of action.
16
17  65. The Defendants were negligent.
18
19  66. The Plaintiffs were harmed.
20
21  67. The Defendants' negligence was a substantial factor in causing the
22      Plaintiffs' harm.
23
24
25
26
27
28

**SECOND CAUSE OF ACTION: NEGLIGENT INFLICTION OF**

**EMOTIONAL DISTRESS - DIRECT VICTIM (AS TO WELLS FARGO)**

68. All of the preceding allegations are incorporated by reference except to the extent that they are inconsistent with this cause of action.

69. Wells Fargo was negligent.

70. The Plaintiffs suffered serious emotional distress.

71. Wells Fargo's negligence was a substantial factor in causing the Plaintiffs' serious emotional distress.

72. The Plaintiffs had a special relationship with Wells Fargo, in that they had banked there for over 30 years, maintaining high account balances and never causing Wells Fargo any financial losses.

**THIRD CAUSE OF ACTION: NEGLIGENT INFLICTION OF**

**EMOTIONAL DISTRESS - BYSTANDER (AS TO WELLS FARGO)**

73. All of the preceding allegations are incorporated by reference except to the extent that they are inconsistent with this cause of action.

74. Wells Fargo negligently caused injury to Insul.

75. When Wells Fargo froze the Plaintiffs' funds causing that injury, Gewant was present at the scene, through variously seeing on his computer screen or hearing on the telephone from Wells Fargo employees that his and his wife's accounts were still frozen, day after day for 20 days.

76. Gewant was then aware that the account freeze was causing injury to his wife.

77. Gewant suffered serious emotional distress.

78. Wells Fargo's conduct was a substantial factor in causing Gewant's serious emotional distress.

## FOURTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (AS TO BOTH DEFENDANTS)

79. All of the preceding allegations are incorporated by reference except to the extent that they are inconsistent with this cause of action.

80. Both Defendants acted with reckless disregard of the probability that the Plaintiffs would suffer emotional distress, knowing that the Plaintiffs were present when the conduct occurred.

81. Although the Plaintiffs were not present *on bank premises* when Chase recklessly communicated the false information about fraudulent activity on the Plaintiffs' accounts and failed and refused to retract the false report for 19 days, they were *virtually* present. Information indicating that the Plaintiffs' bank accounts were frozen was available both on Wells Fargo's premises *and* on its website, where the Plaintiffs continued to witness the devastating fact of the frozen accounts. The reckless conclusion about fraud that had been made by Chase, its communication to Wells Fargo about it, and Wells Fargo's reckless acceptance of the defamatory allegation, were present anywhere that the Plaintiffs were present, when they became aware that their accounts were still frozen. Plaintiffs were caused to suffer by that awareness.

82. One or both of the Plaintiffs were present on various phone calls when Chase continued to deny the Plaintiffs' requests to send a retraction of the fraud report to them or directly to Wells Fargo.

83. The Plaintiffs suffered severe emotional distress.

84. Chase's conduct was a substantial factor in causing that emotional distress.

## FIFTH CAUSE OF ACTION: BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING (AS TO WELLS FARGO)

85.  All of the preceding allegations are incorporated by reference except to the extent that they are inconsistent with this cause of action.

86.  The Plaintiffs and Wells Fargo entered into contracts concerning the Plaintiffs' accounts.

87. The Plaintiffs did all, or substantially all of the significant things that the contracts required them to do.

88. All conditions required for Wells Fargo's performance had occurred.

89.  By freezing the Plaintiffs' funds and leaving them frozen for roughly 20 days, Wells Fargo prevented the Plaintiffs from receiving the benefits under the contract.

90.  By doing so, Wells Fargo did not act fairly and in good faith.

91. The Plaintiffs were harmed by Wells Fargo's conduct.

## **REQUESTED RELIEF**

The Plaintiffs respectfully request that this Court grant the following relief:

1. Actual damages in the amount of $75,000 from each of the Defendants.

2. Punitive damages to be determined at trial, but no less than $1 million from each of the Defendants.

3. The Plaintiffs' costs of suit and any attorney fees incurred by them in prosecuting this case.

4. Prejudgment interest as allowed by law.

5. Postjudgment interest as allowed by law.

6. Any other relief to which the Plaintiffs may be justly entitled.

JURY DEMANDED.


Respectfully submitted,
July ᘔ٩ , 2024.                          July ᘔ٩ , 2024.

---

Dennis Gewant DBA Atlas
Judgment Recovery

Sharon Insul

## VERIFICATIONS

I hereby declare under penalty of perjury that the factual statements in the foregoing are true and correct to the best of my knowledge, information, and belief.

Dennis Gewant DBA Atlas Judgment Recovery

I hereby declare under penalty of perjury that the factual statements in the foregoing are true and correct to the best of my knowledge, information, and belief.

Sharon Insul

FIRST AMENDED VERIFIED COMPLAINT

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**       GOVERNMENT CODE § 8202

☒ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], *not* Notary)

1. _____
2. _____
3. _____
4. _____
5. _____
6. _____

_____          _____
*Signature of Document Signer No. 1*          *Signature of Document Signer No. 2 (if any)*

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of LOS ANGELES

Subscribed and sworn to (or affirmed) before me
on this 29 day of JULY, 20 24
                *Date*      *Month*        *Year*
by
(1) DENNIS GEWANT

(and 2) SHARON INSUL,
                  *Name(s) of Signer(s)*

proved to me on the basis of satisfactory evidence
to be the person(s) who appeared before me.

Signature _____
          *Signature of Notary Public*

BENNY LAKATOS
Notary Public · California
Los Angeles County
Commission # 2446568
My Comm. Expires May 8, 2027

*Seal*
*Place Notary Seal Above*

──────────────── OPTIONAL ────────────────
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _____ Document Date: _____

Number of Pages: _____ Signer(s) Other Than Named Above: _____

©2014 National Notary Association · www.NationalNotary.org · 1-800-US NOTARY (1-800-876-6827)   Item #5910